THOMAS L. SANSONETTI,
 Assistant Attorney General
DAVID L. DAIN, Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
Washington, D.C.  20044-7611
Telephone:  (202) 514-3644

THOMAS E. MOSS
United States Attorney
DEBORAH FERGUSON, ISB #5333
Assistant U.S. Attorney
District of Idaho
P.O. Box 32
Boise, ID  83707
(208) 334-1211

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No.   CIV 04 - 428 - N - EJL |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| IDAHO TRANSPORTATION ) | |
| DEPARTMENT, a department within ) | |
| the State of Idaho and ) | |
| SCARSELLA BROTHERS. INC. ) | |
| ) | |
| Defendants. ) | |


        Plaintiff, the United States of America ("United States"), by authority of the Attorney

General of the United States and through its undersigned counsel, acting at the request and on

behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files

COMPLAINT - PAGE 1

this complaint and alleges as follows:

## INTRODUCTION

1.      This is a civil action for injunctive relief and penalties brought pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. §§ 1319(b) and (d), against the Idaho Transportation Department ("ITD") and Scarsella Brothers, Inc. ("Scarsella Brothers") for violations of the Act's requirements governing the discharge of storm water.

2.      Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519 and Section 506 of the Act, 33 U.S.C. § 1366.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1345 and 1355 and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

4.      Venue is proper in the District of Idaho pursuant to 28 U.S.C. §§ 1391(b) and (c), 1395(a), and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because the violations alleged in this Complaint occurred at a site owned or operated by defendants which is located in this District.

5.      The United States has notified the State of Idaho of the commencement of this action.  That notice is in accordance with CWA Section 309(b), 33 U.S.C. § 1319(b).

## DEFENDANTS

6.      ITD is a department created by or pursuant to the laws of the State of Idaho.

7.      Scarsella Brothers is a Washington State corporation with its principle place of business in Seattle, Washington.

8.      ITD and Scarsella Brothers are both "persons" within the meaning of Sections

COMPLAINT - PAGE 2

301(a) and 502(5) of the Act, 33 U.S.C. §§ 1311(a) and 1362(5).

## STATUTORY AND REGULATORY AUTHORITY

9.      The objective of the Act is to restore and maintain the chemical, physical and biological integrity of the nation's waters.

10.     To accomplish the objective of the Act, Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person except in compliance with certain sections of the Act, including Section 402 of the Act, 33 U.S.C. § 1342.

11.     Section 402 of the Act, 33 U.S.C. § 1342, established a National Pollutant Discharge Elimination System ("NPDES") permit program.

12.     Section 402(p) of the Act, 33 U.S.C. § 1342(p), specifies that a National Pollutant Discharge Elimination System ("NPDES") permit is required for any "storm water discharge associated with industrial activity." The regulations implementing Section 402(p) of the Act, 33 U.S.C. § 1342(p), define "storm water discharge associated with industrial activity" to include discharges associated with construction activity, including clearing, grading, and excavation resulting in the disturbance of at least five acres of total land area. 40 C.F.R. § 122.26(b)(14)(x). In 1998, EPA issued the NPDES General Permit for Storm Water Discharges From Construction Activities ("1998 Construction General Permit" or "1998 CGP"). 63 Fed. Reg. 7901 (Feb. 17, 1998). That permit was reissued on July 1, 2003 ("2003 CGP"). 68 Fed. Reg. 39087 (July 1, 2003).

13.     Section 309 (b) of the Act, 33 U.S.C., § 1319(b), authorizes the Administrator of EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of Section 301 of the Act, 33 U.S.C., § 1311, or of

COMPLAINT - PAGE 3

any conditions or limitation implementing Sections 301 (Effluent Limitations), 302 (Water

Quality Related Effluent Limitations) or 308 (Records and Reports; Inspections) of the Act, 33

U.S.C., §§ 1311, 1312 or 1318, among other provisions, and set forth in permits issued under

Section 402 of the Act, 33 U.S.C. § 1342.

14.    Section 309(d) of the Act, 33 U.S.C., § 1319(d), and 40 C.F.R. § 19, provide, in

part, that any person who violates Section 301 of the Act, 33 U.S.C. § 1311, or of any condition

or limitation implementing Sections 301 (Effluent Limitations), 302 (Water Quality Related

Effluent Limitations) or 308 (Records and Reports; Inspections) of the Act, 33 U.S.C. § 1311,

1312 or 1318, among other provisions, and set forth in permits issued under Section 402 of the

Act, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $27,500 per day for each

such violation occurring after January 31, 1997 through and including March 15, 2004 and

$32,500 per day for each such violation thereafter.

## GENERAL ALLEGATIONS

15.    On June 20, 2001, Defendants each submitted a Notice of Intent ("NOI") to be

covered by the 1998 CGP.  On September 18, 2003, Defendants each submitted a Notice of

Intent ("NOI") to be covered by the 2003 CGP.

16.    On June 22, 2001, EPA authorized Defendants to discharge to waters of the

United States subject to the conditions of the 1998 CGP in connection with the Highway 95

improvements between Bellgrove and Mica Creeks.  EPA assigned to ITD permit number

IDR10A576 and to Scarsella Brothers, permit number IDR10A577.  For the 2003 CGP, EPA

assigned to ITD permit number IDR10AA75 and to Scarsella Brothers, permit number

IDR10AA74.

COMPLAINT - PAGE 4

17.    Defendant ITD is the State agency in charge of construction of an approximately
six-mile section of U.S. Highway 95 South between Bellgrove and Mica Creeks, Idaho ("the
Site"). The Site exceeds five acres of total disturbed area.

18.    The northern portion of the Site is traversed by a number of unnamed streams and
by South Fork Mica Creek. The unnamed streams drain into South Fork Mica Creek which
drains into Mica Bay, a portion of Lake Coeur d'Alene. The southern portion of the Site is
traversed by Bellgrove Creek and Fighting Creek and by an unnamed tributary to Bellgrove
Creek. These water bodies are tributaries to Lake Coeur d'Alene.

19.    The unnamed streams traversing the Site as well as South Fork Mica Creek, Mica
Bay, Bellgrove Creek, Fighting Creek and Lake Coeur d'Alene are "waters of the United States"
within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2.

20.    Defendants are both "operators" of the Site under part IX.O. of the 1998 CGP and
Appendix A of the 2003 CGP. Both are "persons" within the meaning of Section 502(5) of the
Act, 33 U.S.C. § 1353(5).

21.    On or about June 25, 2001, and at times more fully known to Defendants,
Defendants commenced construction activity at the Site including clearing, grading, and
excavation activities. Defendants continue to engage in construction at the Site.  Defendants
therefore are engaging in "industrial activity" at the Site within the meaning of 40 C.F.R.
§ 122.26.

22.    Defendants' construction activities have resulted in discharges of storm water to
the unnamed streams, South Fork Mica Creek, Bellgrove Creek, Fighting Creek and Mica Bay.
This storm water has been conveyed through and over gullies, ditches, channels, pipes, cut and

COMPLAINT - PAGE 5

fill slopes, silt fences, and stockpiled material placed in disturbed areas of the Site. These discharges occurred on a regular basis since the onset of construction at the Site.

23.     The storm water referenced above contains "pollutant[s]" within the meaning of Sections 301(a) and 502(6) of the Act, 33 U.S.C. §§ 1311(a) and 1362(6), and 40 C.F.R. § 122.2, including sand, dirt, sediment, suspended solids, residue, turbidity, and petroleum products.

24.     The Site itself, as well as the gullies, ditches, channels, pipes, cut and fill slopes, and stockpiled material referenced in Paragraph 22 above constitute "point source[s]" within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14).

25.     By causing such pollutants to enter waters of the United States, Defendants have engaged in the "discharge of pollutants" from a point source within the meaning of Sections 301 and 502(12) of the Act, 33 U.S.C. §§ 1311 and 1362(12).

26.     Upon information and belief Defendants have not taken sufficient actions to ensure that discharges will cease.

### FIRST CLAIM FOR RELIEF
(Failure to Comply with 1998 and 2003 CGPs)

27.     Paragraphs 1 - 26 are re-alleged and incorporated herein.

28.     Defendants violated the 1998 CGP by failing to comply with various provisions of the Permit. Under Section VI.A.1. of the 1998 CGP, any failure to comply with the requirements of the Permit constitutes a violation of the Clean Water Act.

29.     Defendants violated the 1998 CGP by failing to modify the storm water pollution prevention plan ("SWPPP") to reflect current conditions on the Site as required by Sections IV.D.4.b. and IV.C., respectively.

COMPLAINT - PAGE 6

30.    Defendants violated the 1998 CGP by failing to include in the SWPPP a description of construction and waste material stored on-site, a description of storage practices used to minimize exposure to storm water, and a description of spill prevention and response procedures as required by Section IV.D.2.c.(4).

31.    Defendants have discharged on numerous occasions and on occasion continue to discharge storm water that violates state water quality standards at the Site.  Defendants violated the 1998 and 2003 CGPs by failing to develop a SWPPP that demonstrates compliance with Idaho State water quality standards as required by Section X.G.3 of the 1998 permit and Section 4.5.A of the 2003 Permit.

32.    Defendants failed to amend the SWPPP whenever there was a change in design, construction, operation or maintenance which had a significant effect on the discharge of pollutants to waters of the United States in violation of Part IV.C.1 of the 1998 CGP.

33.    Defendants failed to amend the SWPPP within seven days whenever investigation by site operators indicated the SWPPP was ineffective in eliminating or significantly minimizing pollutants from sources identified in Part IV.D.1 of the 1998 CGP or was otherwise not achieving the general objectives of controlling pollutants in storm water discharges in violation of Parts IV.C.2 and IV.D.4.b of the 1998 CGP.

34.    Defendants failed to provide a copy of the permit requirements with the SWPPP in violation of Part IV.D.1.h. of the 1998 CGP.

35.    Defendants failed to make a copy of the entire SWPPP available for review by EPA inspectors in violation of Part IV.B.3 of the 1998 CGP.

36.    Defendants violated the 1998 CGP by failing to post a notice near the main

COMPLAINT - PAGE 7

entrance to the construction site in conformance with Section IV.B.2.

37.     Defendants violated the 1998 CGP by failing to institute appropriate control measures as required by Section IV.D.2.(a).

38.     Defendants violated the 1998 CGP by failing to maintain all structural practices and erosion control measures in effective operating condition as required by Sections IV.D.3. and VI.N of the permit.

39.     Defendants violated the 1998 CGP by failing to design erosion and sediment controls to retain sediment on site to the extent practicable as set forth in Section IV.D.2.a.(1)(a). This resulted in large amounts of sediment flowing off of the Site.

40.     Defendants did not design for and then implement adequate best management practices ("BMPs") at the Site.  Defendants violated the 1998 CGP by failing to properly select, install, and maintain BMPs as required by Section IV.D.2.a.(1)(b).

41.     Large amounts of sediment filled South Fork Mica Creek, tributaries to South Fork Mica Creek, and Mica Bay, and most of the sediment was not removed.   Defendants violated the 1998 CGP by failing to remove off-site accumulations of sediment as set forth in Section IV.D.2.a.(1)(c) at the time they occurred.

42.     Defendants violated the 1998 CGP by failing to remove sediment from sediment traps or sedimentation ponds when design capacity had been reduced by 50% as set forth in Section IV.D.2.a.(1)(d).

43.     Defendants violated the 1998 CGP by failing to provide a sedimentation basin for a disturbed area of ten or more acres as required by Section IV.D.2.a.(3)(a) of the 1998 CGP.

44.     Defendants violated the 1998 CGP by failing to have qualified personnel inspect

COMPLAINT - PAGE 8

disturbed areas at least once every 14 days as required by Section IV.D.4.

45. Defendants have failed to select, install or maintain BMPs at the construction site that minimized pollutants in the discharge as necessary to meet applicable water quality standards in violation of Part 4.5.A. of the 2003 CGP. Upon information and belief, these violations are continuing.

46. Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), and 40 C.F.R. Part 19, Defendants are subject to a civil penalty per violation per day that they violate the terms and conditions of their NPDES permits not to exceed $27,500 per day for each such violation occurring after January 31, 1997 through and including March 15, 2004 and $32,500 per day for each such violation thereafter.

SECOND CLAIM FOR RELIEF
(Unauthorized Discharges in Violation of State Water Quality Standards)

47. Paragraphs 1 - 45 are re-alleged and incorporated herein.

48. Section I.B.3.d. of the 1998 CGP states that the permit does not authorize discharges that EPA determines will cause, or have reasonable potential to cause or contribute to, violations of water quality standards. The Idaho State water quality standard for turbidity is 50 NTU's instantaneously above background waters. IDAPA 58.01.02.250.02.e. The Idaho State water quality standards forbid discharges which cause oily sheens on the surface of the water. IDAPA 58.01.02.200.05, 58.01.02.800.02.

49. Upon information and belief, Defendants have discharged on numerous occasions, and continue to discharge, storm water into the South Fork Mica Creek and its tributaries that violates Idaho State water quality standards for turbidity and oily sheen.

COMPLAINT - PAGE 9

50.     Each discharge of storm water to waters of the United States prior to July 1, 2003, that violates state water quality standards is not authorized by the 1998 CGP. Unauthorized discharges of pollutants to waters of the United States violate Section 301(a) of the Act, 33 U.S.C. § 1311(a).

51.     Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), and 40 C.F.R. Part 19, Defendants are subject to a civil penalty per violation per day that they discharge turbidity or create an oily sheen in violation of state water quality standards not to exceed $27,500 per day for each such violation occurring after January 31, 1997.

### THIRD CLAIM FOR RELIEF
(Violation of CWA § 309(a) Compliance Order)

52.     Paragraphs 1 - 50 are re-alleged and incorporated herein.

53.     On May 9, 2002, EPA issued a Compliance Order to Defendants pursuant to Section 309(a) of the Act, 33 U.S.C. § 1319(a). The Compliance Order instructed Defendants, *inter alia*, to cease all discharges not authorized by the CGPs.

54.     Defendants have violated and continue to violate the Compliance Order by discharging turbidity to the South Fork Mica Creek and its tributaries in violation of state water quality standards.

55.     Pursuant to Section 309(d) of the Clean Water Act, 33 U.S.C. § 1319(d), and 40 C.F.R. Part 19, Defendants are liable for civil penalties per violation per day for each violation of the Compliance Order not to exceed $27,500 per day for each such violation occurring after January 31, 1997 through and including March 15, 2004 and $32,500 per day for each such violation thereafter.

COMPLAINT - PAGE 10

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, requests that the Court enter judgment on behalf of the United States and against Defendants as follows:

(1) That the Defendants be permanently enjoined from violating the terms of their storm water construction general permits;

(2) That the Defendants be required to develop storm water management and training programs designed to avoid future violations of the Clean Water Act.

(3) That the Defendants be assessed, pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of CWA Section 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a), which penalty shall not exceed $27,500 per day for each such violation occurring after January 31, 1997 through and including March 15, 2004 and $32,500 per day for each such violation thereafter;

(4) That the United States be awarded costs and disbursements in this action; and

(5) That this Court grant Plaintiff, the United States of America, such other relief as the Court may deem just and proper.

Respectfully submitted,

U.S. Department of Justice
Environment and Natural Resources
   Division

THOMAS L. SANSONETTI
Assistant Attorney General

DAVID L. DAIN
Senior Attorney
Environmental Enforcement Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C.  20044
(202) 514-3644

THOMAS E. MOSS
United States Attorney

DEBORAH FERGUSON
Assistant U.S. Attorney
District of Idaho
P.O. Box 32
Boise, ID  83707
(208) 334-1211

OF COUNSEL:

MARK RYAN
Assistant Regional Counsel
U.S. Environmental Protection Agency
1435 N. Orchard Street
Boise, Idaho 83716
Telephone:  (208) 378-5768
Fax: (208) 378-5744

COMPLAINT - PAGE 12